60811

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re:                                                       :
                                                             :        7:15-cv-08932 (NSR)
THE GREAT ATLANTIC & PACIFIC TEA                             :
COMPANY, INC., et al.,:                                      :
                                                             :
                        Debtor.                              :
-------------------------------------------------------------X
```

# REPLY BRIEF OF APPELLANT JOSEPH ANGELONE

                          Jay B. Itkowitz (JBI-5349)
                          ITKOWITZ PLLC
                          26 Broadway, 21stFloor
                          New York, New York 10004
                          (646) 822-1801
                          jitkowitz@itkowitz.com

                          *Attorneys for Appellant*
                          *Joseph Angelone*

Dated:  New York, New York
           February 9, 2015

60811

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

LEGAL ARGUMENT .....................................................................................................................1

      POINT I ...............................................................................................................................2

           A & P CITES NUMEROUS CASES WHICH ALLEGEDLY INVALIDATE THE LEASE'S PROFIT-SHARING PROVISION. EXCEPT FOR *JAMESWAY*, ALL OF A & P'S CASES INVOLVED A LEASE WHERE THE LANDLORD'S CONSENT, OR A PAYMENT FOR THE LANDLORD'S CONSENT, WAS REQUIRED FOR THE ASSIGNMENT. THOSE CASES ARE THUS INAPPLICABLE TO THE PROFIT-SHARING PROVISION IN THIS CASE WHERE A & P HAD THE RIGHT TO UNILATERALLY ASSIGN THE LEASE WITHOUT ANGELONE'S CONSENT. ............................................................... 2

      POINT II ..............................................................................................................................4

           THE PLAIN MEANING OF § 365(f)(1) DOES NOT INVALIDATE ALL PROFIT-SHARING CLAUSES. RATHER, IT ONLY INVALIDATES CLAUSES WHICH PREVENT THE LEASE FROM BEING ASSIGNED IN BANKRUPTCY. ................................... 4

      POINT III .............................................................................................................................6

           THE LEGISLATIVE HISTORY OF § 365(f) DOES NOT SUPPORT THE CONCLUSION THAT ALL PROFIT-SHARING CLAUSES ARE INVALID. RATHER, THE LEGISLATIVE HISTORY OF § 365(f) INDICATES THAT CONGRESS' INTENT WAS SIMPLY TO OVERRULE *CENT. TRUST* WHICH HELD THAT LEASES CAN CONTRACT AROUND BANKRUPTCY LAWS BY CREATING ANTI-ASSIGNMENT CLAUSES. .......................................................................................................... 6

CONCLUSION ................................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Cent. Trust Co. of Illinois v. Chicago Auditorium Ass'n*,
   240 U.S. 581 (1916)................................................................................................. 1, 7, 8

*In re Boo.com N. Am. Inc.*,
   2000 WL 1923949, (Bankr. S.D.N.Y. Dec. 15, 2000) ............................................................ 2

*In re Bradlees Stores, Inc.*,
   2001 WL 1112308 (S.D.N.Y. Sept. 20, 2001)...................................................................... 2

*In re Howe*,
   78 B.R. 226 (Bankr. D.S.D. 1987).................................................................................. 2

*In re Nat'l Sugar Ref. Co.*,
   21 B.R. 196 (Bankr. S.D.N.Y. 1982).............................................................................. 2

*Matter of U. L. Radio Corp.*,
   19 B.R. 537 (Bankr. S.D.N.Y. 1982).............................................................................. 4

*Robb v. Schindler*,
   142 B.R. 589 (D. Mass. 1992) ..................................................................................... 2, 7

*State St. Bank & Trust Co. v. Salovaara*,
   326 F.3d 130 (2d Cir. 2003) ........................................................................................ 5

*United States v. Aleynikov*,
   676 F.3d 71 (2d Cir. 2012) ......................................................................................... 5

*Williams v. Taylor*,
   529 U.S. 362 (2000).................................................................................................. 5

**Statutes**

11 U.S.C. § 365 (f)(1) ................................................................................................. 3, 4, 5, 6

**Congresional Materials**

H.R. 6, 95th Cong., 1st Sess. (Jan. 4, 1977) ................................................................... 7

H.R. 8200 [Report No. 95-595], 95th Cong., 1st Sess. (Sept. 8, 1977).......................... 7

60811

H.R. REP. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ............................................. 6, 7

HR 31, 94th Cong., 1st Sess. (Jan. 14, 1975) ................................................................................. 7

HR 32, 94th Cong., 1st Sess. (Jan. 14, 1975) ................................................................................. 7

**Dictionary**

Black's Law Dictionary (10th ed. 2014)........................................................................................ 4

60811

60811

## INTRODUCTION

By Order dated October 21, 2015, [Record on Appeal, Item No. ("ROA") A10] (the "Order"), the Bankruptcy Court (Hon. Robert D. Drain, U.S.B.J.) overruled Appellant, Joseph Angelone's, ("Appellant" or "Angelone") Amended Objection to Assumption and Assignment of Nonresidential Real Estate Lease ("Objection") [ROA A6]. Angelone timely filed a Notice of Appeal and appellant brief. [Supplemental Record on Appeal ("SROA") 1], [ECF DOC ("Doc.") 6]. On January 25, 2016, Appellee, The Great Atlantic & Pacific Tea Company, Inc. et al ("Appellee" or "A & P") filed its opposing brief. [Doc. 12]. This reply brief is respectfully submitted in further support of Angelone's argument that the Court below erred in overruling his Objection. There are no facts in dispute[1] and A & P opposes Angelone's application solely on legal grounds. In essence, the parties' dispute revolves around the interpretation 11 U.S.C. § 365 (f)(1).

## LEGAL ARGUMENT

Appellee's brief argues that the case law, legislative history and plain meaning of 11 U.S.C. § 365 (f)(1) support its conclusion that all profit-sharing provisions in leases are automatically invalid. As detailed below, the non-precedential bankruptcy cases cited by A & P are distinguishable and the legislative history of § 365 (f)(1) indicates that Congress' intent in enacting § 365 (f)(1) was to overrule *Cent. Trust Co. of Illinois v. Chicago Auditorium Ass'n*, 240 U.S. 581 (1916) and prohibit lease provisions that use artful drafting to contract around the bankruptcy code—not prohibit every lease provision which, although not related to bankruptcy,

---

[1] The facts are contained in Angelone's brief.

1

60811

might have an effect on a bankruptcy estate. Additionally, the plain meaning of § 365 (f)(1) as suggested by A & P results in the statute containing extra and superfluous words. Therefore, as explained below, a correct reading of 11 U.S.C. § 365 (f)(1) indicates that only conditions which prevent a lease from being assigned in bankruptcy are prohibited, not every condition.

### POINT I

**A & P CITES NUMERIOUS CASES WHICH ALLEGEDLY INVALIDATE THE LEASE'S PROFIT-SHARING PROVISION.  EXCEPT FOR *JAMESWAY*, ALL OF A & P'S CASES INVOLVED A LEASE WHERE THE LANDLORD'S CONSENT, OR A PAYMENT FOR THE LANDLORD'S CONSENT, WAS REQUIRED FOR THE ASSIGNMENT. THOSE CASES ARE THUS INAPPLICABLE TO THE PROFIT-SHARING PROVISION IN THIS CASE WHERE A & P HAD THE RIGHT TO UNILATERALLY ASSIGN THE LEASE WITHOUT ANGELONE'S CONSENT.**

A & P cites numerous cases allegedly supporting its claim that all profit sharing clauses are invalid. However, A & P's cases, similar to the Bankruptcy Court's cases, discuss leases where the landlords consent was needed to assign the lease and where there was a fee for said consent. *E.g., In re Howe*, 78 B.R. 226 (Bankr. D.S.D. 1987); *In re Boo.com N. Am. Inc.*, 2000 WL 1923949, (Bankr. S.D.N.Y. Dec. 15, 2000); *In re Bradlees Stores, Inc.*, 2001 WL 1112308 (S.D.N.Y. Sept. 20, 2001); *Robb v. Schindler*, 142 B.R. 589 (D. Mass. 1992); *In re Nat'l Sugar Ref. Co.*, 21 B.R. 196 (Bankr. S.D.N.Y. 1982). None of these bankruptcy cases, or the sole

2

district court case cited by A & P, should apply here, and, with the exception of *Jamesway*[2], none of these cases address a lease where a landlord's consent was not needed prior to bankruptcy—a meaningful distinction—as clarified by many bankruptcy courts.

For example, in *In re Office Products of Am., Inc.*, 136 B.R. 992, 997 (Bankr. W.D. Tex. 1992) the lease in question had a section which required the tenant to obtain the lessor's consent in order to assign the lease, whether the assignment was to be by operation of law or consent of the parties. Thereafter, the lease stated that the "[t]enant shall in consideration therefor pay to the Landlord " a fee. The court held that the profit sharing provision "**never triggered, because the trustee, by way of § 365(f)(1), avoided seeking the lessor's consent in the first place. In so doing, the trustee avoided ever having to pay for that consent**, as . . . otherwise envisioned." *Office Products* 136 B.R. at 997. Thus, the court concluded that the lease could be assigned without regard to the profit-sharing clause.

In essence, when a lease cannot be assigned absent the landlord's consent, or absent a payment for the landlord's consent, § 365 operates to transfer the lease without regard to a landlord's consent. As such, no payment is required, due to the landlord's consent not being needed. However, when a lease allows the tenant to assign the lease before and after entering bankruptcy, both as a provision and as a practical matter, and without any impossible or unreasonable conditions, there is no reason why profit sharing clause should be deemed automatically invalid or the tenant and/or trustee excused from paying. Therefore, in the present

---

[2] *In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996) is more fully discussed in Angelone's main brief. No other court has cited *Jamesway* for the proposition that § 365(f)(1) is applied to a profit-sharing clause which does not require a landlord's consent.

3

case, where A & P had the unilateral right to assign the Lease—before and after entering bankruptcy—the profit-sharing provision should be upheld and enforced.

### POINT II

**THE PLAIN MEANING OF § 365(f)(1) DOES NOT INVALIDATE ALL PROFIT-SHARING CLAUSES. RATHER, IT ONLY INVALIDATES CLAUSES WHICH PREVENT THE LEASE FROM BEING ASSIGNED IN BANKRUPTCY.**

Contrary to A & P's assertions, § 365(f)(1) does not prohibit profit-sharing lease provisions where a landlord's consent is inapplicable. Although, Congress, "in section 365, has stated a general policy favoring assignment[,] [b]alanced against this general policy is the requirement that the non-debtor contracting party receive the full benefit of his bargain." *Matter of U. L. Radio Corp.*, 19 B.R. 537, 545 (Bankr. S.D.N.Y. 1982).

The plain meaning of 11 U.S.C. § 365(f)(1) invalidates lease provisions which (i) "prohibit"(ii) "restrict" or (iii) "condition" the assignment in the event of a bankruptcy.[3] Under A & P and the bankruptcy court's reading of the statute, all conditions are invalid, notwithstanding their effect on the lease. Such a reading of the statute renders "restricts" meaningless—every restriction is either a prohibition or condition. As such, under A & P's reading of § 365(f)(1), the language of the statute is extraneous.

When interpreting statutes, this Court and the Supreme Court have regularly held that statutes should be interpreted against surplusage—or excess words—and every word in the

---

[3] *Black's Law Dictionary* (10th ed. 2014) defines "prohibit" as to "prevent, preclude or severely hinder." Restriction is defined as "confinement within bounds or limits; a limitation of qualification."

4

statute should be interpreted as a necessity. *State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is well-settled that courts should avoid statutory interpretations that render provisions superfluous."); *United States v. Aleynikov*, 676 F.3d 71, 81 (2d Cir. 2012)(internal citations omitted)("It is our duty to give effect, if possible, to every clause and word of a statute."). As the Supreme Court has articulated, the rule against surplusage is a "cardinal principle of statutory construction." *Williams v. Taylor*, 529 U.S. 362, 364 (2000).

Therefore, when interpreting § 365(f)(1) this Court should give full meaning to all of the words in the statute and Congressional intent. There is no evidence that Congress intended to invalidate every condition in a lease that is related to bankruptcy. Rather, Congress only intended to invalidate lease conditions which prevent a lease from being assigned—similar to a lease provision that "prohibits" or "restricts" an assignment. In essence, when Congress added the word "condition" after "prohibits" and "restricts" its apparent intent was to prevent a party from artfully drafting around a prohibition or restriction which achieved the same effect. Congress, therefore, apparently added the word "condition" to include any other lease provision which has the effect of preventing the lease from being assigned. Congress did not intend to invalidate every bankruptcy condition in a lease—only conditions which effectively prevent a bankruptcy assignment—either directly, through a clause or by an impractical condition. For all other conditions, Congress intended to balance the creditor's interest with the general policy of a landlord receiving the "full benefit of his bargain." *Matter of U. L. Radio Corp.*, 19 B.R. 537, 545 (Bankr. S.D.N.Y. 1982).

In the present case, no provision of the Lease, either directly or indirectly, prevents A & P from assigning the Lease.[4] The profit-sharing provision in dispute merely allocates some of the benefits from the assignment, after deducting all of A & P's legal, advertising, brokerage and similar costs. Nothing about the provision, even if denominated a "condition," would make the assignment infeasible. In fact, it is undisputed that if not for this provision, the parties would never have renewed the Lease which was otherwise set to expire on October 31, 2018 and the estate would have had no valuable leasehold to market. As such, the profit sharing provision is not automatically invalid and the Court should balance Angelone's and A & P's rights. Given that the extension created value for the estate, the Landlord should be permitted to reap the "benefit of his bargain", namely, enforcement of the subject provision.

## POINT III

**THE LEGISLATIVE HISTORY OF § 365(f) DOES NOT SUPPORT THE CONCLUSION THAT ALL PROFIT-SHARING CLAUSES ARE INVALID. RATHER, THE LEGISLATIVE HISTORY OF § 365(f) INDICATES THAT CONGRESS' INTENT WAS SIMPLY TO OVERRULE *CENT. TRUST* WHICH HELD THAT LEASES CAN CONTRACT AROUND BANKRUPTCY LAWS BY CREATING ANTI-ASSIGNMENT CLAUSES.**

Most of the courts that address the legislative history of § 365(f)(1) look to H.R. REP. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ("H.R. REP. 95-595"), the report

---

[4] A & P erroneously attempts to equate Angelone's request to the Bankruptcy Court that it "condition" the assignment of the Lease on Angelone receiving a payment with the legal dispute regarding whether the profit-sharing provision of the Lease was a "condition" as used in § 365. The context of the argument was that Angelone was entitled to enforcement of the profit-sharing provision as provided for in the extension agreement.

6

accompanying[5] H.R. 8200 [Report No. 95-595], 95th Cong., 1st Sess. (Sept. 8, 1977) ("HR 8200"), the bipartisan bill which was enacted under Pub. L. No. 95-595 and known as the 1978 bankruptcy code. *E.g. Robb v. Schindler*, 142 B.R. 589, 590-91 (D. Mass. 1992); *In re Howe*, 78 B.R. 226, 229 (Bankr. D.S.D. 1987). Thus, these courts find little relevant legislative history.[6] *See also Robb,* 142 B.R. at 590 (Describing the legislative history on §365(f) as "scant."). H.R. 8200 itself, however, was a markup of H.R. 6, 95th Cong., 1st Sess. (Jan. 4, 1977), which was a compromise between two competing bills[7], one proposed by the National Conference of Bankruptcy Judges and one proposed by the Commission on Bankruptcy Laws of the United States ("Commission"), the Commission Congress created to recommend changes to the Bankruptcy law. H.R. REP. 95-595, 5963-64. In drafting the Bankruptcy Code, the Commission stated that its intent for § 4-603, the precursor to 11 U.S.C. § 365(f), was to overrule *Cent. Trust Co. of Illinois v. Chicago Auditorium Ass'n*, 240 U.S. 581 (1916), which allowed landlords and tenants to contract around the bankruptcy law and utilize anti-assignment provisions in leases.

This resulted in leases where the landlord had the sole option to terminate the lease if a tenant declared bankruptcy. Congress wanted creditors to get the value of such a lease and thus intentionally overruled *Cent. Trust Co.* by enacting § 365. There is no evidence that Congress' intended to invalidate every lease condition that has anything to do with bankruptcy. Rather,

---

[5] H.R. REP. 95-595 also accompanied S. 2266, the Senate version of H.R. 8200.
[6] "Subsection (f) partially invalidates restrictions on assignment of contracts or leases." H.R. 95-595, 349. *See also id.* at 348 ("To be sensitive to the rights of the nondebtor party to executory contracts and unexpired leases. If the trustee is to assume a contract or lease, ***the courts will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.***") (emphasis supplied).
[7] HR 31, 94th Cong., 1st Sess. (Jan. 14, 1975) and HR 32, 94th Cong., 1st Sess. (Jan. 14, 1975).

7

60811

Congress' intent was only to invalidate lease conditions, such as the one in *Cent. Trust Co.*, which prevent, either directly or through a draconian clause, the lease from being assigned in bankruptcy.  Moreover, the evidence is that Congress intended for the courts to act so that the nondebtor received the "benefit of his bargain". H.R. 95-595 at 348 Thus, the legislative history does not support A & P's argument that "all" of the lease's benefits automatically go to creditors. Here, where Angelone specifically agreed to a lease extension, without which the lease would have no value and could not be sold for the benefit of A & P's creditors, the invalidation of the profit sharing clause is inequitable to Angelone and strips away the benefit of "his bargain." Accordingly, this Court should uphold the profit-sharing provision in the lease extension.

60811

## **CONCLUSION**

For the reasons set forth above, Appellant respectfully requests that the Court enter an order reversing the Bankruptcy Court's decision in its entirety, granting the Appellant 50% of the profits from the assignment of the Lease and grant such other and further relief as is just and proper.

Dated: New York, New York
       February 9, 2016

                                      ITKOWITZ PLLC
                                      *Attorneys for Appellant*

                        By:  /s/ Jay B. Itkowitz
                                      Jay B. Itkowitz, Esq. (JBI5349)
                                      26 Broadway, 21st Floor
                                      New York, New York 10004
                                      (646) 822-1801
                                      jitkowitz@itkowitz.com

Of Counsel:

    JAY B. ITKOWITZ
    ALLEN KOHN

9