UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., *et al.*,

                                        Debtors.

--------------------------------------------------------

JOSEPH ANGELONE,

                                        Appellant,

        -against-

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC.,

                                        Appellee.

No. 15 Civ. 8932 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

On October 22, 2015, Appellant Joseph Angelone filed a notice of appeal with this Court

seeking review of a portion of the October 21, 2015 order of the United States Bankruptcy Court

for the Southern District of New York (Drain, *J.*) overruling Appellant's objections to and

approving an asset purchase agreement allowing The Great Atlantic & Pacific Tea Company,

Inc. ("A&P" or "Appellee"), and a number of wholly-owned subsidiaries of A&P (together the

"Debtors"), to dispose of certain assets.  (ECF No. 1.)  Appellant objected to the assignment of a

commercial property lease between Appellant and A&P unless a "profit-sharing" provision

contained in the lease was enforced, entitling Appellant to a portion of the sale proceeds.  The

Bankruptcy Court specifically overruled those objections, rejecting Appellant's entitlement to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   10 17 2016

any portion of the proceeds, pursuant to Section 365(f) of the Bankruptcy Code.  For the following reasons, the order is AFFIRMED.

## BACKGROUND

This appeal concerns the assignment of A&P's[1] unexpired lease with Appellant for the premises of one A&P store, located at 2424 Flatbush Avenue, Brooklyn, New York, that was auctioned off during the Chapter 11 bankruptcy proceedings below.  (J.A. A6, Am. Obj. to Assumption and Assignment of Lease at ¶ 1 (Oct. 14, 2015) ("Objection"), Doc. 1400.)[2]

**I.      Lease Agreement between Angelone and A&P**

A&P began leasing the commercial space from Appellant in 1958, and continued to do so through a series of lease extensions and amendments.  (J.A. A6, Obj. at Ex. A, Extension of and Amendment to Lease dated June 19, 2003 ("Lease Extension") at 1.)  The parties' most recent Lease Extension extended the term of the lease to October 31, 2008 and granted A&P "the right and option" to further renew the lease "for four (4) separate periods of five (5) years each." (Lease Extension at ¶ 2.)  Appellant indicates the lease would otherwise have expired in 2018, rather than, after accounting for the renewal periods, 2028.  (Appellant Br. at 3.)  The rent schedule for each of those renewal periods, as part of the bargain between the parties, contains corresponding increases.  (*Id.* at ¶ 3 (increasing by $50,000 in both the third and fourth period).)

The Lease Extension also provides that "[i]n the event that Tenant [A&P] assigns the Lease . . ., Tenant shall pay to Landlord [Angelone] on a monthly basis, one half (1/2) of the Net

---

[1] A&P is a wholly-owned subsidiary of Montvale-Para Holdings Inc.  The Debtors include wholly-owned subsidiaries of A&P, such as Food Basics, Inc., APW Supermarkets, Inc., Shopwell, Inc., Pathmark Stores, Inc., and A&P Real Property, LLC.

[2] The Joint Appendix on appeal consists of thirteen items so designated by Appellant and Appellee available on the electronic docket for the underlying proceedings in Adv. Pro. No. 15-23007.  They are referenced herein as "J.A." A1 through A10, B1, and C1, as cited by the parties in their submissions, and Supp. 1—with "Doc." numbers indicating where on the underlying electronic docket the materials can be found.

Profit . . . if any, for said month"—where Net Profit is defined as the profit A&P received by assigning the lease in excess of the monthly rent minus certain costs.  (*Id.* at ¶ 5.)  Paragraph 5 of the extension is, thus, a profit-sharing provision triggered if A&P assigns the lease at a profit.

Appellant indicates, as supported by the text of the agreement, that this final lease extension, including the profit-sharing provision, were the result of negotiations between the two parties to terminate a litigation regarding the original lease and set aside any purported defaults under the terms of the lease.  (*Id.* at 1 (whereas clause discussing litigation), ¶ 6 (discussing outstanding letters of default); Appellant Br. at 3.)  Appellant also suggests he insisted upon the inclusion of the profit-sharing provision "based upon his family's prior experiences with A&P in which the supermarket rented space from the Angelone family and thereafter turned around and subrented and/or assigned the lease thereby creating a windfall for A&P."  (Appellant Br. at 3.)

## II.    Procedural History

After commencing Chapter 11 proceedings, A&P filed a motion requesting the Bankruptcy Court's approval of, among other things, the sale of dozens of A&P stores, free and clear of liabilities, as well as the assumption and assignment of related leases and other executory contracts as part of the sale transactions.  (J.A. C1, Debtors' Motion at 5 (July 20, 2015), Doc. 26.)  Among the property leases in question was A&P's lease with Appellant.  (*Id.* at 35 (listing "2424 Flatbush Avenue").)  On August 11, 2015, the Bankruptcy Court entered an order granting A&P's motion.  (J.A. A2, Global Bidding Procedures Order at 7-8 (Aug. 11, 2015), Doc. 495.)  Appellant "object[ed] to the proposed sale . . . to the extent it involves the [Flatbush store's lease] because no provision ha[d] been made, nor assurance provided that Angelone w[ould] receive 50% of the proceeds from the proposed assignment of his lease . . . ."  (Objection at 2.)  On that basis, Appellant requested that the Bankruptcy Court provide him with an "equal

division of the proceeds." (*Id.* at 5.)  A&P opposed the objection, arguing that the profit-sharing

provision was unenforceable under Section 365(f)(1) of the Bankruptcy Code, which invalidates

any "anti-assignment" provision that "prohibits, restricts, or conditions the assignment" of a

lease in bankruptcy.  (*See* J.A. A7, Omnibus Reply at 17-19); 11 U.S.C. § 365(f)(1) (2012).

      Following briefing and a hearing on the issue, the Bankruptcy Court overruled

Appellant's objection.  (J.A. B1, Oct. 16, 2015 Hr'g Tr. at 117:13-118:18; *see also id.* at 113:4-

114:2; J.A. A10, Order Overruling Obj. (the "Order") at 12 (Oct. 21, 2015), Doc. 1510.)  Judge

Drain held that the profit-sharing provision that Appellant sought to enforce—the subject of this

appeal—was "clearly a condition" on assignment that was invalidated under the "plain language"

of § 365(f).  (J.A. B1, Hr'g Tr. 118:5-7.)  He reasoned that such profit-sharing provisions are

contrary to Congress's intent that "the benefit [of an assignment in bankruptcy of an unexpired

lease] should go to the debtor" for "the benefit of all of its creditors," (*id.* at 117:18-21, 118:9-

11), and that "the case law is clear" that such provisions are unenforceable, (*id.* at 113:8-20).

Thus, the Bankruptcy Court's Order overruled "the objections of . . . [Appellant] ([Docs.] 913

and 1400) relating to Store No. 70292), seeking to enforce [a] purported 'profit sharing'

provision[] of the applicable lease[]," ruling that Appellant would "not be entitled to receive any

portion of the purchase price paid to the Debtors under the Purchase Agreement."  (Order at 12.)

      Appellant timely filed his notice of appeal with this District Court.  28 U.S.C. § 158.

## ISSUE ON APPEAL

      Whether the Bankruptcy Court's holding that the 50% profit-sharing provision contained

in the lease was unenforceable as a matter of law under Section 365(f) of the Bankruptcy Code

was legal error and that, after balancing the equities, Appellant was entitled to 50% of the proceeds of the lease assignment.  (Appellant Br. at 2.)[3]

## JURISDICTION AND STANDARD OF REVIEW

The District Court may hear appeals from "final judgments, orders, and decrees[,]" 28 U.S.C. § 158(a)(1), or "with leave of the court, from other interlocutory orders and decrees[,]" *id.* § 158(a)(3).  *In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993) ("the district court acts as an appellate court in reviewing a bankruptcy court's judgments").  "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*."  *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012); *see also In Matter of Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016).

## DISCUSSION

This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) because the appeal concerns a final order disposing of Appellant's objections to the assignment of the lease at issue.  Whether the profit-sharing provision contained in the lease agreement between Appellant and Appellee is an anti-assignment provision prohibited by Section 365(f) is a legal conclusion requiring *de novo* review.  None of the relevant facts are disputed.

### I.    The Text and History of Section 365(f)

Chapter 11, Section 365(f), of the Bankruptcy Code provides, as relevant here, for the trustee or debtor-in-possession[4] during a business reorganization to assign unexpired leases of the debtor "notwithstanding a provision in [the] . . . unexpired lease . . ., or in applicable law,"

---

[3] While Appellant initially asserted five interrelated issues in his Notice of Appeal, his brief has narrowed the issue on appeal to this question.  (*Compare* J.A. Supp. 1, Notice of Appeal, *with* Appellant Br. at 2.)

[4] "[A] debtor-in-possession has the same rights as a trustee to assign contracts."  *In re Eastman Kodak Co.*, 495 B.R. 618, 621 n.1 (Bankr. S.D.N.Y. 2013) (citing 11 U.S.C. § 1107(a)).

that (1) "prohibits, restricts, or conditions the assignment of [the] . . . lease" or (3) "terminates or modifies, or permits a party other than the debtor to terminate or modify, [the] . . . lease or a right or obligation under [the] . . . lease on account of an assignment[.]"  11 U.S.C. § 365(f)(1)[5] & (f)(3).  Should a trustee choose to assume and assign an unexpired lease for the benefit of the debtor's creditors "in accordance with the provisions of [§ 365(a)]," then "adequate assurance of future performance" by the assignee must be provided.  *Id*. § 365(f)(1) ("the trustee may assign such . . . lease under paragraph (2) of this subsection") & (f)(2).  And, as a result of "the assumption or assignment of [the] . . . lease by the trustee," the terms of the "lease, right, or obligation may not be terminated or modified" by the provision in question.  *Id*. § 365(f)(3).

By the plain text of the statute, any provision in an unexpired lease held by the debtor that "terminates or modifies" either the lease *or* "a right or obligation under" the lease due to an assignment of the lease is unenforceable during an assignment in bankruptcy pursuant to subsection (f)(3).  *Id*.  Indeed, subsection (f)(1) allows a bankruptcy trustee to assign such a lease "notwithstanding a provision . . . that *prohibits, restricts, or conditions*" such an assignment.  *Id.* § 365(f)(1) (emphasis added).  Thus, subsection (f)(3) provides a broad exclusion against terminating or modifying provisions that impact the lease as a result of an assignment, and subsections (f)(1) and (f)(2) function together to provide the trustee with the affirmative right to assign the lease notwithstanding any condition or prohibition placed on assignment itself.

Section 365 as a whole "reflects the important consideration that the trustee should be able to abandon contracts that impose burdensome liabilities upon the bankruptcy estate, but

---

[5] Appellant's arguments do not focus on subsections (b) (defaults and special considerations surrounding adequate assurance in the shopping center context) or (c) (exclusions regarding assumption and assignment) of § 365.  Where a tenant-debtor seeks to assign a shopping center lease to another, potentially dissimilar, merchant, additional issues are presented beyond basic adequate assurance of performance.  *See In re Trak Auto Corp.*, 367 F.3d 237, 245 (4th Cir. 2004); *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990).

should also be allowed to retain favorable contracts that benefit the estate." *In re Eastman Kodak Co.*, 495 B.R. 618, 623 (Bankr. S.D.N.Y. 2013) (quoting *In re Midway Airlines, Inc.*, 6 F.3d 492, 494 (7th Cir. 1993)).  The drafting Commission that assisted Congress with designing the Code recommended the inclusion of § 365(f) to allow a debtor to enforce unexpired leases "notwithstanding such a 'bankruptcy clause' or anti-assignment clause" contained in the lease agreement.  Transmitting a Report of the Commission on the Bankruptcy Laws of the United States ("Commission Report"), 1973 WL 172789, at Ch. 8.C.6 (Executory Contracts and Unexpired Leases) (Sept. 6, 1973); *see In re Lazarus*, 478 F.3d 12, 18 n.7 (1st Cir. 2007).[6]

The Congressional reports accompanying the Code state that subsection (f) "partially invalidates restrictions on assignment of contracts or leases by the trustee to a third party" and that (f)(3) specifically "invalidates contractual provisions that permit termination or modification in the event of an assignment, as contrary to the policy of this subsection."  H.R. Rep. No. 95-595, at 349 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6305; S. Rep. No. 95-989, at 59 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5845.  Subsection (f) is, thus, a powerful tool for "advanc[ing] one of the Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of creditors."  *In re Eastman Kodak*, 495 B.R. at 623 (quoting *In re Midway*, 6 F.3d at 494); *see also Robb v. Schindler*, 142 B.R. 589, 590-91 (D. Mass. 1992) (collecting cases reflecting "a clear statutory interpretation favoring maximum realization of assets of the debtor" and concluding that "provisions restricting assignment were invalid pursuant to § 365(f)(1)").

---

[6] The somewhat related subsection (e) was designed to eliminate "any vestiges of case law, such as the decision in [*Central Trust Co. v. Chicago Auditorium Ass'n*, 240 U.S. 581 (1916)], whereby commencement of a [bankruptcy] itself terminates an agreement to which the debtor is a party[.]"  Commission Report, 1973 WL 172789, at Ch. 8.C.6; *see* 11 U.S.C. § 365(e) (containing language similar to (f)(3) but concerned with provisions "conditioned on" the financial health or bankruptcy status of the debtor).

**II.      Prior Interpretations of Section 365(f)**

Twenty years ago in *In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996), a

bankruptcy court in this District had occasion to address similar post-assignment profit-sharing

provisions.  One of the profit-sharing provisions that the court invalidated declared that, upon

assignment of the lease, "Tenant shall pay Landlord 50% of the 'profits' received by Tenant

from the assignee . . . ."  *In re Jamesway*, 201 B.R. at 75.  In determining this provision was

unenforceable under Section 365(f)(1), the court explained that, while it "d[id] not have carte

blanche to rewrite leases," the interplay between subsections (f)(1) and (f)(3) subjects all lease

provisions to judicial scrutiny to determine their "anti-assignment effect," with each subsection

concerned with different restrictions:

> While they operate in tandem to promote the Congressional policy
> favoring a debtor's ability to maximize the value of its leasehold
> assets, subsections (f)(1) and (f)(3) deal with different problems;
> (f)(1) with provisions that prohibit, restrict or condition assignment,
> and (f)(3) with provisions that terminate or modify the terms of a
> lease because it has been assumed or assigned.

*Id.* at 77-78.

The *Jamesway* court explained that "§ 365 reflects the clear Congressional policy of

assisting the debtor to realize the equity in all of its assets;" and in furtherance of that policy,

"lease provisions conditioning a debtor-in-possession's right to assignment upon the payment of

some portion of the 'profit' realized upon such assignment are routinely invalidated under

§ 365(f)(1)."  *Id.* at 78 (collecting cases).  This interpretation of Section 365(f) also guided the

Bankruptcy Court's decision in this case.  Though subsections (f)(1) and (f)(3) may overlap in

certain instances, they also address distinct issues—leading the *Jamesway* court to the conclusion

that "construing [§ 365(f)(1)] to invalidate provisions that directly or indirectly restrict the

debtor's ability to assign the subject lease does not render § 365(f)(3) superfluous."  *Id.* at 78.

The Ninth Circuit's Bankruptcy Appellate Panel similarly invalidated an assignment restriction provision under § 365(f)(1), without addressing the interplay between (f)(1) and (f)(3), in *In re Standor Jewelers West, Inc.*, 129 B.R. 200 (B.A.P. 9th Cir. 1991).  Perhaps more obviously, the provision in *Standor* explicitly provided that "[a]s a condition to [the] [l]andlord's consent to any assignment or subletting" the landlord would be "entitled to receive, in the case of an assignment, 75% of all consideration given, directly or indirectly by the assignee to [the] tenant for tenant's leasehold interest[.]"  *In re Standor*, 129 B.R. at 202 n.3.  The panel had no need to address (f)(3), because the provision at issue only restricted and conditioned assignment without modifying any terms of the lease.  *Compare* 11 U.S.C. § 365(f)(1), *with id.* § 365(f)(3).

## III.    Application of Section 365(f) to the Lease Extension

The profit-sharing provision contained in the Lease Extension between Appellant and Appellee is triggered whenever the lease is assigned.  (Lease Extension at ¶ 5 ("In the event that Tenant assigns the Lease . . ., Tenant shall pay to Landlord on a monthly basis, one half (1/2) of the Net Profit . . . if any, for said month").)  Appellant argues that Paragraph 5 is not voided by § 365(f)(1) because assignment is freely given under the provision even if such an assignment is accompanied by the profit-sharing requirement.  (Appellant Br. at 4.)  Appellant also argues that interpreting § 365(f)(1) to prohibit the profit-sharing provision collapses (f)(1) and (f)(3) such that (f)(3) becomes superfluous, contrary to established principles of statutory interpretation. (Reply Br. of Appellant at 4-5.)  "[T]he Court must start, as always, with the plain meaning of the statute."  *In re Eastman Kodak*, 495 B.R. at 622 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).  In light of that plain meaning, neither of these arguments is persuasive.

In this particular circumstance, though not the rationale employed by the *Jamesway* court, (f)(1) and (f)(3) both address the problematic features of the provision.  Subsection (f)(3) applies to the provision because it modifies an obligation under the lease—namely, the amount of monthly rent due to the landlord, which increases by 50% of whatever net profit is realized by the assignment.  Since that modification occurs *only when the lease is assigned*, it is unenforceable during bankruptcy proceedings.  Similarly, subsection (f)(1) allows for assignment of the lease notwithstanding the condition placed on the assignment by the profit-sharing provision.  Appellant may be correct that the provision does not prohibit or restrict assignment outright.  (Appellant Br. at 4; *but see* Appellee Br. at 6-7 (correctly noting that (f)(1) renders more than blanket prohibitions and consent-based restrictions unenforceable).)  Nevertheless, the provision undoubtedly requires payment by Appellee to Appellant of 50% of any profit realized by such an assignment, *i.e.* the assignment is *conditioned* on complying with the profit-sharing requirement.  It makes no difference whether that condition is left implicit rather than explicit.  *Compare In re Standor*, 129 B.R. at 202 n.3 (landlord "entitled to receive" assignment proceeds as "a condition to [l]andlord's consent to any assignment"), *with In re Jamesway*, 201 B.R. at 75 ("[i]f Tenant assigns this Lease . . . Tenant shall pay Landlord 50% of the 'profits' received by Tenant from the assignee").  Both subsections, albeit for different reasons, render the condition of the profit-sharing provision, which happens to also modify the terms of the lease, unenforceable during a reorganization under Chapter 11.

While arguing that the Bankruptcy Court's decision and reliance on subsection (f)(1) reduces subsection (f)(3) to mere surplusage, Appellant ignores the words "restriction" and "conditions"—contained in (f)(1)—and writes them out of the statute entirely.  (*See* Appellant Br. at 5 ("the intent of 11 U.S.C. [§] 365(f) was only to invalidate lease clauses that *prevent* a

10

lease from being assigned in bankruptcy or that *terminate or modify* the lease, either directly or indirectly through "artful drafting") (quoting *In re Jamesway*, 201 B.R. at 79)); *Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative").  But subsection (f)(1) is not only concerned with anti-assignment provisions that *prohibit* assignment.  It also addresses any such clause that "*restricts, or conditions*," assignment.  11 U.S.C. § 365(f)(1).  As discussed, the provision at issue here necessarily restricts assignment by conditioning it on the payment of half of the realized profits.  Subsection (f)(3) is not made superfluous by, in this instance, (f)(1) operating concurrent to (f)(3) to invalidate this provision.  Rather, it serves to highlight the insurmountable obstacles the provision faces under the Bankruptcy Code.  *Cf. In re Standor*, 129 B.R. at 202 (provision implicated only (f)(1)); *In re Bradlees Stores, Inc.*, No. 01 Civ. 3934 (SAS), 2001 WL 1112308, at *3, 11-13 (S.D.N.Y. Sept. 20, 2001) (citing *In re Jamesway*, 201 B.R. at 78) (affirming bankruptcy order overruling objection to assignment based on provision that would be invalid in part under (f)(1), because agreement restricted assignment to affiliates of the debtor, and in part under (f)(3), since the agreement allowed for termination of the lease if the debtor attempted to assign the lease more broadly, without discussing which subsection invalided which aspect).

Therefore, upon a *de novo* review, the Court agrees with the Bankruptcy Court's determination, based on long-standing precedent, that the profit-sharing provision contained in the 2003 Lease Extension is an unenforceable anti-assignment provision under *at least* § 365(f)(1), and the trustee was able to assign the unexpired lease without conditioning such an assignment on Appellant receiving half of the proceeds from the bankruptcy auction.  *See In re Standor*, 129 B.R. at 202 (provision "condition[ed] and restrict[ed] assignment"); *In re*

*Jamesway*, 201 B.R. at 78; *see also Robb*, 142 B.R. at 591 (citing *In re Howe*, 78 B.R. 226, 229-30 (Bankr. D.S.D. 1987)) ("§ 365(f)(1) precludes enforcement of a four percent assumption fee provision paid for by the purchaser"). Although the profit-sharing provision was part of a carefully negotiated bargain between Appellant and Appellee, the benefits of that bargain gave way to countervailing public policy considerations once Appellee declared bankruptcy. *See In re Crow Winthrop Operating Partnership*, 241 F.3d 1121, 1124 (9th Cir. 2001) (citing *In re Jamesway*, 201 B.R. at 79) ("change in ownership provision was properly denied effect under § 365(f) as a de facto anti-assignment clause" that was "in conflict with a fundamental bankruptcy policy": allowing the debtor to "realiz[e] the full value of its assets").

The Bankruptcy Court did not need to balance the equities given the unenforceability of the provision. Congress has already struck "a careful balance between the rights of the parties" by enacting Section 365(f). *In re Howe*, 78 B.R. at 230.

## CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court dated October 21, 2015 is AFFIRMED. The Clerk of the Court is respectfully directed to terminate the appeal at ECF No. 1 and to close the case.

Dated:   October 17, 2016
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

12